Michael Flannery and Thomas Flannery, doing business under the name of Flannery Bros., *v.* The State Mutual Fire Insurance Company of Harrisburg, Penna., Appellant.

*Insurance—Fire insurance—Agent—Declarations—Evidence.*

In an action upon a compromise agreement entered into after a fire between the insured and B., the alleged agent of an insurance company, plaintiffs testified that B. represented himself as the adjuster of the company; that after making a full examination of the circumstances of the fire and the extent of the loss he proposed a compromise, which was accepted by plaintiffs; that the secretary of the company had afterwards stated that B. was an adjuster for the company, that what he had done was right, and that payment would be made as agreed upon by him. *Held,* that although B.'s declarations alone were insufficient to establish his agency, it could be inferred from his acts and their recognition by the company, and proved by the declarations and admissions of the officers of the company.

Argued March 19, 1896. Appeal, No. 245, Jan. T., 1896, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1893, No. 197, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed.

Assumpsit on a compromise agreement for losses on a policy of fire insurance. Before PECK, P. J.

The court charged in part as follows:

The plaintiffs virtually admit that they have not done some of these things that are required by the policy, and in terms that they could not recover if the suit had been brought upon this policy, but they claim that instead of bringing the suit upon the policy they have brought this suit upon a compromise entered into between the plaintiffs and the agent of this defendant, who came here representing himself to be an adjuster. As

to the history of Mr. Ballinger as he appears in this case, we first learn of him on the morning of March 24, 1892. The Flannery Brothers were coming from their home down to their property in North Towanda and saw this man standing upon the walls of the ruins of the building which had been destroyed by fire. As they came up Ballinger inquired of them where the parties resided that had met with this loss. You will remember the testimony on that subject. Mr. Flannery said they were the parties that were interested in the property. This policy is not upon the whole property, but only the five sixths interest of the plaintiffs in the mill. They informed Mr. Ballinger that they were parties interested, and that there was another man by the name of Thomas Clancy who was the owner of the remaining interest. Mr. Ballinger said that he had come to settle and adjust the loss, and as I remember the evidence now Mr. Ballinger and the Flannerys came down to town—I am not sure whether they came down to town before going after this man Clancy or not—one of the Flannery Brothers, anyway, went back and got Clancy and they came down to Mr. DeWitt's office. The Flannery Brothers testify, and also Mr. Clancy, that at Mr. DeWitt's office the agent went over the grain which they claimed was destroyed by this fire, and that they made the amount some ten or eleven hundred dollars—I don't know but one of them speaks of it as ten or twelve hundred dollars. That he said that he was satisfied that their loss amounted to the sum insured, and he said he did not need to figure as to the building for he was satisfied that the amount of the loss upon the two and a half story building was more than the amount insured, and that he did not need to figure as to that. He then asked the Flannery Brothers what they would do about it. Michael Flannery replied that if the company would pay him the $2,000, the face of the policy, that he would give them the $56.67 cash deposit, and after a little discussion this man said that he would do that and that he would pay them within thirty or sixty days. He then asked them if they were willing to qualify to the statement that they had made to him as to the amount of their loss, as to the personal property, and Michael answered that he was willing to do it, and the agent then answered that it was not necessary or he guessed it was not necessary, or words to that effect. This is

testified to, substantially, by Michael Flannery and his brother Thomas and by Clancy, as substantially what took place there. This, you will remember, was on the 24th of March. On the 29th day of April, some twelve or fifteen days after the time had expired for furnishing the proofs of loss in this case, Mr. Huntzinger, the secretary of the company, came here and went up to Clancy's house and informed him that he wanted to see him and the Flannerys here at town, and I don't know but he made known his business ; but at any rate he wanted to secure proofs of loss ; that his company could not adjust the loss without proofs. Thomas Flannery was not present at the time that Huntzinger was there, but Michael Flannery and Clancy the next day came down, and had a conversation. Michael and Clancy both swear that they were told by the secretary of this company that Ballinger was their adjuster but that he had not done the business right; that he had not made out the proofs of loss, and that that was necessary before any further action could be taken by the company. Both Flannery and Clancy agree upon that, that they were told by this secretary that Ballinger was their adjuster, and were told further that his adjust- ment was all right and that they would be paid according to Ballinger's adjustment, but that it was necessary to make out these proofs of loss, and that they did make them out.

On the part of the company, they have called Mr. Huntzinger, who says that Ballinger was not an employee of their company, that he was not their adjuster and that he did not inform these parties, Clancy and Flannery, that he was their adjuster, but that he did tell them that before the company could take any further action they would have to make out proofs of loss, and that he would submit those proofs of loss to the company and report the action that the company would take. Whether he did so report, there is no evidence to show, but that he did get the proofs of loss there is no question. He also testifies that this man Ballinger made no report to the company and that they knew nothing about it. They also call Mr. Hanna, the president of the company, and he testifies that Ballinger was in his employ; that he was engaged in the con- struction of flouring mills and distilleries and furnishing ma- chinery of different kinds, and that this man was in his employ and was a mill-wright and was doing business for him, solicit-

ing orders for machinery and other goods, and was also a solicitor for insurance for him, and that he did solicit insurance, for which he, the president, claimed compensation from the company and received it. But, as I remember his evidence, Ballinger did not report directly to the company, but did all the work that he did as solicitor through the president, Mr. Hanna. That he was up at a place in the western part of the state called Reynoldsville, and that he wrote to him, but just what that letter contained we are not informed. The letter was not in the possession of the president, and being a letter written to Mr. Ballinger, of course, he did not have possession of it and could not give it in evidence. But in pursuance of whatever was written this man Ballinger came to Towanda, and he says that he is not sure whether his expenses for coming here were paid by the company wholly, or whether they were divided between himself and the company. That he was soliciting business for himself, in his own particular business, and he is not sure and is not able to state whether or not the company paid the expenses of Ballinger's coming over here wholly, or only in part. That afterward he did receive a letter, possibly from Towanda, but on the paper being found he thinks that he must be mistaken about that part of it and that the paper must have been made out after Mr. Ballinger returned to Pittsburg where the president's, Mr. Hanna's, place of business was at that time. This paper has been shown to you, and simply contains an itemized statement of the losses of property contained in the mill. Nothing, as I remember it, is said about the structure; only in relation to the property. Mr. Huntzinger was inquired of as to whether or not at the time that he was at Towanda making out this proof of loss he had a statement made by Ballinger to the company. He says his best recollection is that he did not, but it is possible and he would not swear that he did not. He don't recollect, he says, of having it here, but he will not swear that he did not have it.

[Now, it is from these facts that the plaintiffs in this action ask you to find that this man Ballinger had full authority to adjust, settle and compromise this loss. And we propose to leave to you two questions: First, was Ballinger authorized by this company to settle and adjust this loss? Second, did he settle, adjust and compromise this loss? And for the purposes

of this trial we instruct you that if he had the authority from the company and if he did actually compromise this loss by receiving the cash deposit which these plaintiffs had in the hands of the company, and settled the $2,000 policy for that amount less the cash deposit, which they were to retain, then we instruct you that these plaintiffs would be entitled to recover the sum of $2,000, with interest from May 24, 1892. If he had the authority to compromise—had the authority which it is claimed on the part of the plaintiffs he had—and if he did actually compromise this claim, then we think that under the case of the Dwelling-House Insurance Company v. Wagner, he had the right to waive the provisions of this policy, every one of them.] [1]

Verdict and judgment for plaintiffs for $2,352. Plaintiffs appealed.

*Error assigned*, among others, was (1) above instruction, quoting it.

*A. W. Schalck* and *Rodney A. Mercur*, for appellant.—No authority is shown in the alleged agent: Hays & Wick v. Lynn, 7 Watts, 524; American Ins. Co. v. Schultz, 82 Pa. 51; Union Ref. Co. v. Bushnell, 88 Pa. 89; Greene v. Ins. Co., 91 Pa. 387; Am. Underwriters v. George, 97 Pa. 241.

It is not competent to prove an agent's authority by the declarations of the agent. Nor are his acts done without the knowledge or authority of his principal any evidence of his agency: Whiting v. Lake, 91 Pa. 349; Gass v. Citizens B. & L. Asso., 95 Pa. 101; B. & O. Employees Rel. Asso. v. Post, 122 Pa. 579.

This is a mutual insurance company, and the plaintiffs, as members of this company, are bound to know its rules and regulations and the extent and scope of the authority of its agents: Hackney v. Allegheny Ins. Co., 4 Pa. 187; Diehl v. Adams Co. M. F. Ins. Co., 58 Pa. 443; Pottsville M. F. Ins. Co. v. Imp. Co., 100 Pa. 142; Smith v. Ins. Co., 24 Pa. 325; Mitchell v. Ins. Co., 51 Pa. 402.

*Wm. Maxwell, D. C. De Witt* with him, for appellees.—A compromise, fairly entered into, discharges the original cause of

action which cannot be recurred to by either party: Berks & Dauphin Turnpike Co. v. Hendel, 11 S. & R. 123; 2 Wood on Fire Ins. sec. 450; Nat. Mut. F. Ins. Co. v. Barnes, 21 Pac. Rep. 165; Gristock v. Ins. Co., 49 N. W. Rep. 634.

An insurance company is bound by the acts of its agent in all that he does in relation to the settlement and adjustment of a loss, so far as he acts within scope of authority or employment or apparent authority.    Apparent authority seems to be the test: 2 Wood on Fire Ins. sec. 408; Snowden v. Kittanning Ins. Co., 122 Pa. 502; Wagner v. Dwelling House Ins. Co., 143 Pa. 338; McGonigle v. Agricultural Ins. Co., 167 Pa. 364; Aurora Fire Ins. Co. v. Harrisburg, 168 Pa. 1.

When Ballinger appeared, pursuant to our notice to the company, with the notice, proceeded to examine into the loss, obtained a full account of the loss, made an itemized statement of the loss, mailed the same or delivered it to the company, after which the secretary of the company came on with the very papers taken away by Ballinger, and admitted Ballinger was sent by the president of the company to examine into the loss, this was a sufficient showing to make Ballinger's declarations evidence and to establish the agency: 2 Greenleaf on Evidence, sec. 65; Valentine v. Packer, 5 Pa. 333; Brig Odorilla v. Baizley, 128 Pa. 283; Stewartson v. Watts, 8 Watts, 392.

OPINION BY MR. JUSTICE FELL, May 11, 1896:

This action was brought upon a compromise agreement entered into after the fire by the insured and a representative of the insurance company.    It was not denied that such an agreement had been made, nor were its terms in dispute.    The inquiry at the trial related to the authority of the agent who assumed to act for the company.    On the day following the fire notice of the loss was sent to the office of the company at Harrisburg. The secretary forwarded the notice to the president, who was at the time in another part of the state, and he sent S. W. Ballinger to make an examination.    Ballinger, who represented the company in some capacity, made a report in writing to the president.    The testimony does not show what his instructions were, and it leaves in doubt the nature of his report.    It appears from the plaintiff's testimony that Ballinger represented himself as the adjuster of the company; that, after making a full exam-

ination of the circumstances of the fire and the extent of the loss he proposed a compromise, which was accepted by the plaintiff; that the secretary of the company had afterwards stated that Ballinger was an adjuster for the company, that what he had done was right, and that payment would be made as agreed by him. Ballinger's declarations alone were insufficient to establish his agency, but it could be inferred from his acts and their recognition by the company, and proved by the declarations and admissions of the officers of the company. The testimony upon the subject was properly submitted, and if it. established his authority to make the agreement upon which suit was brought the plaintiff was entitled to recover.

As judgment was entered for the plaintiff on the verdict, the form of the reserved question is unimportant and need not be considered.

The judgment is affirmed.