(February 16, 1912.)

## MARYSVILLE MERCANTILE COMPANY, LTD., a Corporation, Respondent, v. HOME FIRE INSURANCE COMPANY, a Corporation, Appellant.

### [121 Pac. 1026.]

FIRE INSURANCE — CONTRACT OF INSURANCE — AGENT — AUTHORITY TO CONTRACT—RENEWAL OF POLICY—ACTS AND AGREEMENTS OF ADJUSTER—RATIFICATION OF COMPANY—PAYMENT OF AMOUNT AGREED UPON BY ADJUSTER—LIMITATION IN POLICY AS TO COMMENCING SUIT—ESTOPPEL—NONWAIVER CONTRACT—ADMISSION OF EVIDENCE —RULING OF COURT—INSTRUCTIONS—EXCEPTIONS TO—FINDINGS OF JURY.

#### (Syllabus by the court.)

1.   Where a local agent of a fire insurance company has power to write, issue and sign insurance policies, and is furnished by the company with forms of policies to be written and to be signed by the agent, full power is conferred upon such agent to write, issue and deliver policies of insurance upon application, and such policies become effective upon the writing and delivery by such agent, unless the company cancels such policies, and the authority of such agent extends to renewals of policies previously issued upon request of the insured, and they become effective upon the expiration of the original policy.

2.   Where an agent of a fire insurance company, with authority to write policies, makes an agreement with an insured that he will write a policy of insurance and look after it and continue it during the life of a loan made to the insured, and the policy is written and left with the agent for safekeeping, such agent has authority to renew said policy and continue the insurance, and when a new policy is issued and retained by the agent for safekeeping, it is a valid policy and binds the fire insurance company until canceled.

3.   Where an agent for a fire insurance company has power to issue and renew policies, and is intrusted with forms of policies to be written, issued and delivered, after being signed by such agent, and such agent instructs a clerk to issue a policy, and the policy is issued and left with the bank, of which said agent is cashier, for safekeeping, in accordance with an agreement with the insured, the contract of insurance becomes complete and ef-

fective, and the actual personal delivery of such policy to the insured is not required, as the possession of the person with whom such policy is to be left for safekeeping under such agreement between the agent and the insured is equivalent to the possession of the insured.

4. The payment of premium upon an insurance policy at the time the policy is delivered is not a condition precedent to the existence of a policy of insurance, as the company may, through its agent, extend credit for the premium, and if this is done, the contract of insurance will be binding upon the company without the actual payment of the premium.

5. Where a special agent of a fire insurance company, with authority to adjust losses by fire upon property insured by the company, and acting as such agent and adjuster, in company with an adjuster of other companies and the insured, makes an adjustment and settlement of the loss, and a compromise is reached between the insurance companies and the insured, and by such agreement the amount of such loss and the amount to be paid by each company is fixed and agreed to, and the insured is induced to accept such compromise and agrees to the same, the insurance company is bound by the acts of the adjuster, and the sum agreed upon may be recovered from the company.

6. Where a policy of fire insurance contains the provision that "no suit or action on the policy for the recovery of any claim shall be sustainable in any court of law or equity . . . . unless commenced within twelve months next after the fire," an objection to the maintaining of the suit, because not commenced within the time fixed by the policy, cannot be raised and urged as error, when such objection is made in this court for the first time.

7. The evidence in this case examined and found sufficient to support the verdict of the jury and the judgment.

8. A judgment will not be reversed by this court on the alleged error that the evidence was not introduced in proper order, unless such alleged error appears to have been prejudicial, as the order of proof is a matter largely within the discretion of counsel.

9. Where instructions are requested upon the trial by either party to the suit, and such instructions are refused, in order for this court to review such instructions and determine whether or not the trial court erred in refusing the same, it is necessary for the appellant to bring to this court upon appeal all the instructions given upon the trial.

APPEAL from the District Court of the Sixth Judicial District for Fremont County.   Hon. J. M. Stevens, Judge.

An action to recover upon an insurance policy.   Judgment for plaintiff.   Defendant appeals.   *Affirmed.*

Moyle & Van Cott, and Soule & Soule, for Appellant.

There was never any consideration for the agreement, or the issuing of the policy, and the minds of the parties never met.   Neither the insurance company nor its agent executed a contract of insurance, or was conscious of the fact that any agreement to that effect had ever been made.   Neither was there a policy of insurance issued or delivered, or ever in the possession of respondent or its agent.   (*Harper & Co. v. Ginners' Mut. Ins. Co.,* 6 Ga. App. 139, 64 S. E. 567; *London & L. Fire Ins. Co. v. Turnbull,* 86 Ky. 230, 5 S. W. 542; *Clark v. Ins. Co.,* 89 Me. 26, 35 Atl. 1008, 35 L. R. A. 276; *Mutual Life Ins. Co. v. Young,* 90 U. S. 85, 23 L. ed. 152.)

"An adjustment, in order to be binding, must be made with full knowledge of all the facts material to the right of the insured to recover." (*Remington v. Insurance Co.,* 14 R. I. 245.)

The adjustment was made, or rather the amount of loss determined, without regard to the liability of the appellant, as is evidenced by the nonwaiver agreement.   The liability of the company was to be determined later.   (*Fame Ins. Co. v. Norris,* 18 Ill. App. 570.)

One relying upon an estoppel *in pais* must specially plead the same.   (8 Ency. of Pl. & Pr. 10; 2 Herman on Estoppel, 1447; *Sharon v. Minnock,* 6 Nev. 377; Sutherland, Code Pleading, sec. 555; *Homberger v. Alexander,* 11 Utah, 373, 40 Pac. 260; *Leland v. Isenbeck,* 1 Ida. 469.)

The estoppel does not apply where the facts are equally well known to both parties.   (*Western Land Assn. v. Bank,* 80 Minn. 317, 83 N. W. 192; *Sanborn v. Van Duyne,* 90 Minn. 215, 19 N. W. 41; *Lash v. Rendell,* 72 Ind. 475.)

Gustin, Gillette, Davis & Brayton, and Millsaps & Miller, for Respondent.

Even if the contract of insurance was not in effect at the time of loss, appellant by its action in effecting the adjust-

ment, putting the respondent to expense in making it, and permitting respondent to settle with the other companies represented on less favorable terms than otherwise, is estopped to deny the policy's existence. (3 Cooley's Briefs on Ins., 2739, and cases cited; *Georgia Home Ins. Co. v. Allen,* 128 Ala. 451, 30 So. 537; *Home Ins. Co. v. Marple,* 1 Ind. App. 411, 27 N. E. 633; *Titus v. Glenns Falls Ins. Co.,* 81 N. Y. 410 (a leading case); *Eagan v. Aetna Fire & Marine Ins. Co.,* 10 W. Va. 583.)

As to permitting payment to other companies upon the adjustment as estoppel, see *Fishbeck v. Phenix Ins. Co.,* 54 Cal. 522; *Gibbs v. Dutchess County Mutual Ins. Co.,* 66 Hun, 632, 21 N. Y. Supp. 203; *Levy v. Peabody Ins. Co.,* 10 W. Va. 560, 27 Am. Rep. 598.

Manual delivery of a policy of insurance is not necessary to insure its validity. (1 Cooley's Ins. Briefs, 442; citing *N. Y. Life Ins. Co. v. Babcock,* 101 Ga. 67, 69 Am. St. 134, 30 S. E. 273, 42 L. R. A. 88; *Springfield Fire & Marine Ins. Co. v. Jenkins,* 9 Ky. L. R. 932; *Mfg. Co. v. Ins. Co.,* 16 Pa. Sup. Ct. 91.)

The delivery is sufficient to give effect to the insurance, though the agent retains the policy in his own possession for safekeeping, whether at the request of insured or not, and the policy is not in fact actually given into possession of the insured prior to loss. (1 Cooley's Ins. Briefs, 449; *Franklin Fire Ins. Co. v. Colt,* 20 Wall. (U. S.) 560, 22 L. ed. 423; *Tennant v. Travelers' Ins. Co.,* 31 Fed. 322; *Newark Mach. Co. v. Kenton Ins. Co.,* 50 Ohio St. 549, 35 N. E. 1060, 22 L. R. A. 768.)

In choosing appellant to write the insurance for which he had contracted, Kruger acted as agent for respondent. (*Michigan Pipe Co. v. Michigan Fire Ins. Co.,* 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277.)

Payment of the premium is not a condition precedent to the existence of a policy of insurance, even where specifically made so by the terms of the policy itself. Where credit has been extended to the insured, the policy is nevertheless in force, and the agent relies upon the insured for the payment

of the premium. (*McCabe v. Aetna Ins. Co.*, 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641; *Continental Ins. Co. v. Foller*, 101 Ill. App. 77; *Western Assur. Co. v. McAlpin*, 23 Ind. App. 220, 77 Am. St. 423, 55 N. E. 119; *Firemen's Ins. Co. v. Kuessner*, 164 Ill. 275, 45 N. E. 540.)

The company will be bound by an adjustment or compromise by any officer or agent whom it sends to the insured to represent it in the adjustment of the loss. (4 Cooley's Ins. Briefs, p. 3585, and cases cited; *Millers' Nat. Ins. Co. v. Kinneard*, 136 Ill. 199, 26 N. E. 368; *Fame Ins. Co. v. Norris*, 18 Ill. App. 570; *Flannery v. State Mut. Fire Ins. Co.*, 175 Pa. 387, 34 Atl. 798.)

STEWART, C. J.—This action was brought to recover the sum of $1,793.68, alleged to be due for damages sustained by the respondent by loss of property in a fire alleged to have occurred on June 15, 1908, under a policy of insurance alleged to have been written and delivered to the respondent by the appellant for the sum of $2,000, and upon an adjustment of the loss sustained by respondent arising by reason of said fire, and the promise to pay such adjustment as a settlement of the liability of the defendant on account of said policy of insurance.

The case was tried before a jury and a general verdict was returned in favor of the plaintiff for the sum of $2,044.79, and also a special verdict was returned by the jury answering certain questions.

A motion for a new trial was made and overruled and this appeal is from the judgment and also from the order denying and overruling the defendant's motion for a new trial.

The complaint alleges, among other things, "That on or about the 14th day of March, 1908, the defendant herein made, executed and delivered to the plaintiff herein at St. Anthony, a certain policy of insurance for the sum of $2,000 upon the stock of general merchandise. . . . . That by the terms of said policy of insurance the general merchandise stock above described was by the defendant insured for the use and benefit of the plaintiff herein, against destruction by

fire, for the period of one year from the date of said policy and until the 14th day of March, 1909. . . . . That on or about the 20th day of June, 1908, the defendant herein made and entered into an adjustment of the loss arising by reason of said fire, and at said time agreed and promised to pay the plaintiff herein, in full and complete settlement of the liability of the defendant on account of said policy of insurance the sum of $1,793.68, which amount the plaintiff agreed to accept in full settlement of all liability of the defendant arising by reason of said policy of insurance.''

It is then alleged that the defendant refused to pay said alleged indebtedness, and judgment is asked for the sum of $1,793.68, with interest from the 15th day of June, 1908, the date of the fire. To this complaint the defendant filed an answer and denied execution and delivery of the policy of insurance and denied the loss. From these issues and the evidence the jury returned a special verdict as follows:

''Q. Was any insurance policy delivered by the defendant to the plaintiff covering the stock of merchandise of plaintiff during the period of time from March 14th, 1908, to March 14th, 1909? A. Yes.

''Q. If you answer 'Yes' to the last question, to whom was such policy delivered, when was it delivered and at whose request was it so delivered? A. Commercial National Bank. March 14th, 1908, at plaintiff's request.

''Q. Was there any agreement or promise on the part of the defendant to pay plaintiff the loss sued on in this case? A. Yes.

''Q. If you answer 'Yes' to the last question, when was such agreement or promise made and by whom was it made? A. At the time of the adjustment about June 20th, 1908, by the defendants through their agent, E. M. Weiler, Jr.''

The jury also returned a general verdict in favor of the plaintiff for $2,044.79.

The important and ruling question presented upon this appeal is: Was there a valid existing policy of insurance at the time of the fire? The jury, by their special verdict, found

that there was an insurance policy delivered by the appellant to the respondent, covering the stock of merchandise of plaintiff during the period of time from March 14, 1908, to March 14, 1909. Counsel for appellant argue with much vigor that the evidence in this case does not sustain this finding of the jury. The evidence is quite voluminous, and it will be impossible to review in detail all the testimony. From this testimony, however, there seems to be no question but that the evidence shows the following to be the facts: The respondent was engaged in the mercantile business in the town of Marysville, Fremont County, Idaho, during the years 1907 and 1908. John D. C. Kruger was the cashier of the Commercial National Bank at St. Anthony and vice-president of the Marysville State Bank at Marysville during the years 1907 and 1908, and was also local agent of the appellant company, and had power and authority to accept applications for insurance and to write policies and to bind the appellant company by such contracts of insurance. William A. Barrett, during the years 1907 and 1908, was secretary, treasurer and manager of the Marysville Mercantile Company. In the early part of 1907, Barrett, on behalf of the respondent company, applied to Mr. Shetler, who was then cashier of the Marysville State Bank, for a loan to the respondent, and was referred by Mr. Shetler to Mr. Kruger of the Commercial National Bank. Mr. Barrett met Mr. Kruger and discussed the desired loan and he agreed to make the same, and it was agreed that $2,000 of additional insurance should be written upon the respondent's property, and that Mr. Kruger should write the insurance, and Mr. Kruger wrote the insurance policy and suggested that it be left in the bank as it would be safer than any place else, and the loan was made. This policy was dated on the 14th day of March, 1907, and expired on the 14th day of March, 1908.

At the time this policy was written Mr. Barrett told Kruger that he wanted him to write the policy, and Kruger said he wanted the policy to be kept up, and that the company keep itself fully insured, and Mr. Barrett told Kruger that

he wanted the $2,000 additional insurance all the time, and Kruger insisted that it be insured as long as the loan was continued by the bank to the mercantile company. This policy of insurance was continued during its term. In February, 1908, A. L. McDonald, who was a special agent of the appellant company, was in the office of Mr. Kruger and Mr. Sharp, and offered to assist them in any work they might have in the office in connection with the insurance business, and was given a bunch of policies expiring in March, and was directed to write up policies renewing such insurance and continuing the same, among which was the policy written by the appellant on the 14th day of March, 1907, and expiring on the 14th day of March, 1908, and a renewal policy was written by Mr. McDonald in proper form, under the direction of Mr. Sharp, who was assisting Kruger in the insurance business, and Kruger's name was attached to said policy as agent by the use of a rubber stamp which was commonly used for that purpose, and the policy retained by the bank, as was done in the case of the former policy. This policy was dated February 18, 1908, and began March 14, 1908, and expired March 14, 1909. Kruger says: "When I wrote a policy of insurance or transacted business with the Home Fire Insurance Company of Utah, I signed my name as John D. C. Kruger, agent. I write so very little insurance myself that I don't know that it is written any different than anybody else's insurance. Some of the parties in the bank would write up the policy. They had a rubber stamp which they used as my signature. The rubber stamp which they used in writing the policies of insurance is the rubber stamp that was used when my name was signed to that policy."

On the same day a report was transmitted to the general agency of said company at Salt Lake City of the writing of the insurance policy involved in this case, and this report is in the following language:

"Old Policy No. 2073                                                    New Policy No. 3095.

Agency at Salt Lake City, Utah.

St. Anthony, Idaho,

THE

HOME FIRE INSURANCE COMPANY OF
UTAH.

| Name of Assured. | Amount Insured. | Rate. | Amount of Premium. | Commencement of Risk. | Term. | Expiration of Risk. |
|---|---|---|---|---|---|---|
| Marysville Mercantile Company. | $2000.00 | $3.75 | $75.00 | Mar. 14, '08 | 1 yr. | Mar. 14, '09 |

$2000.00   On their stock of general merchandise....................

This report Mailed................., 190...., by Heber J. Grant & Co., Agents."

After this report had been mailed to the general agency of appellant company, the policy was retained in the bank and nothing further transpired until the fire occurred, and the property insured was destroyed, on June 15, 1908. After this fire occurred, notice was sent to the company at Salt Lake City that a fire had occurred, and the appellant company instructed E. M. Weiler, who was then at Idaho Falls, to go to St. Anthony and investigate the Marysville fire. Mr. Weiler appeared on the scene there, and issued directions for Mr. Barrett to call the board of directors of the respondent company together and sign some blanks and resolutions authorizing Mr. Barrett to act as adjuster in adjusting the loss with the various insurance companies, and this was done, and the resolutions were given to Mr. Weiler, and Mr. Rooklidge, another adjuster, and Mr. Patten and Mr. Barrett proceeded to adjust the losses. In this adjustment Mr. Weiler represented the Home Fire Insurance Company of Utah, the appellant, and Mr. Rooklidge represented the other insurance companies as adjuster, and the loss was adjusted, there being five different insurance companies who had written policies each for $2,000. It was contended by Mr. Weiler and Mr. Rooklidge that the freight upon the goods destroyed should be deducted from the total valuation of the property,

and that the balance should be divided among the five companies, and that the loss to be paid by each company should be $1,793.68.   Mr. Barrett contended that the freight should not be deducted from the value of the goods, but it was finally agreed that the matter should be submitted to one Junius Young of Salt Lake, an insurance man, and whatever he said should be final; this was done, and Mr. Young decided that the freight should be deducted, and the total loss should exclude the deductions of the freight charges paid, leaving the loss to be paid by each insurance company $1,793.68.

At the time the adjustment of loss was ascertained and determined by Mr. Weiler and Mr. Rooklidge, Mr. Weiler acted for the appellant company and Mr. Rooklidge for the other four companies.   Mr. Weiler had in his possession the daily report sent from the office of Kruger to the appellant company upon the writing of the policy of insurance involved in this case, and referred to the same and used it in adjusting said amount of loss, and Mr. Weiler stated that the respondent company had a policy with the appellant, and that a policy written by the company becomes operative from the time it is written and a daily report is transmitted to the company of the writing of such policy.   Prior to the adjustment of said loss, Mr. Weiler, acting for the appellant company, required Mr. Barrett to enter into a nonwaiver agreement, which among other things provides:

"It is hereby mutually understood and agreed by and between the Marysville Mercantile Company of the first part and the Home Fire Insurance Co. of Utah, and other companies signing this agreement, party of the second part, that any action taken by said party of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on fifteenth day of June, 1908, shall not waive or invalidate any of the conditions of the policy of the party of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the party of the second part."

After the adjustment had been made all the insurance companies having policies upon the respondent's property paid the amount determined upon between Weiler and Rooklidge, except the appellant company. The appellant company refused to pay any sum whatever, upon the ground that the respondent company had no policy in the appellant company, and on August 24, 1908, they wrote a letter to the respondent as follows:

"Salt Lake City, August 24, 1908.

"Marysville Mercantile Company,

  St. Anthony, Idaho.

"Gentlemen:

"We are in receipt of your proof of loss in the matter of your fire at Marysville, Idaho, on June 15th last and in response to the same will say that you did not have any policy in our company and are in no way entitled to recover anything from us. The action of Mr. E. M. Weiler, Jr., was due to a mistake for which the company was in no way responsible.

"Yours respectfully,

"HEBER J. GRANT & CO., General Agts.,

"By GEO. J. CANNON."

When the present suit was upon trial it appeared that the policy of insurance involved in this case was in the possession of counsel for appellant. This policy was written and left with the Commercial National Bank of St. Anthony, of which Mr. Kruger was an officer at the time it was written, for safekeeping. Upon the trial, however, it turned up in the possession of counsel for appellant and was offered and received in evidence; and upon the back of this policy is indorsed the following: "Canceled. Dated March 14, 1908. R. P. $75.00."

It does not appear in the evidence that the respondent ever paid the appellant company the premium due upon this policy, but it does appear that the respondent was doing busi-

ness at the Commercial National Bank of St. Anthony, and had an account there, and that Barrett directed Kruger to write the policy and keep the insurance up for the respondent, and it was considered by Mr. Barrett that the premium would be charged to the account of the respondent at such bank. When this indorsement of cancellation was made upon this policy or why it was made does not appear from the evidence; the appellant offers no evidence upon the subject.

Counsel for appellant devote some time in their brief to a discussion of the fact that the policy was not produced or offered in evidence until late in the trial of the cause, and that the appellant had no opportunity of securing witnesses or offering testimony explaining the indorsement. There was, however, no offer to make such proof and no statement that such proof could be made, and no time asked to secure evidence to make such proof. The policy was in the possession of the appellant, and when suit was brought good judgment would have suggested that the company should prepare to show the cancellation of such policy, and why and how it was made. There is nothing in the contention of the appellant with reference to not having an opportunity to explain this indorsement.

The indorsement of cancellation evidently was not made upon the date stated—March 14, 1908. That is the date the policy was to take effect. The respondent was never notified of any cancellation of this policy until August 24, 1908. The daily report was transmitted to the appellant company of the writing of this policy, taking effect March 14, 1908. That daily report was retained by the appellant company, and no notification was sent to the respondent company that the policy was not in force or had been canceled, until after the fire. The evidence shows that the policy, on the date canceled, was in the possession of the Commercial National Bank of St. Anthony, and not in the possession of the company at Salt Lake. If this policy had been canceled on March 14, 1908, it is strange that the appellant company should have communicated with Mr. Weiler and asked him to go and investigate the fire, and that they placed in his hands the daily

report of this policy at that time, and that Mr. Weiler, their representative and adjuster, should have such daily report and use it upon the adjustment of such loss. If the policy had been canceled on March 14, 1908, then the appellant company had no interest in the fire or loss. The evidence fully justified the jury in making the finding that the policy of insurance in question was delivered to the respondent, covering the stock of merchandise, and was written and was in force at the time of the fire.

We think under the proof in this case and the law applicable thereto that it must be admitted that John D. C. Kruger was the agent of the appellant company on March 14, 1907, and during that year and up to the time the fire occurred, and that as such agent he had power and authority to write policies of insurance for the appellant company; that the agreement entered into and made between Barrett and Kruger at the time the policy was written in March, 1907, was to the effect that the insurance should be attended to and kept up by Kruger during the life of the loan, and that full authority was given Kruger by the respondent to write the policy involved in this case, and dated February 18, 1908, taking effect March 14, 1908, and that such policy when written was delivered to the respondent, by the respondent having authorized Kruger to retain the policy and keep it in a safe place during its existence. Mr. Cooley, in his excellent compilation of Insurance Briefs and citations, vol. 1, p. 449, announces the general rule as follows:

"In view of the general rule that a delivery to the agent is a delivery to the insured, it has been held in numerous cases that delivery is sufficient to give effect to the insurance, though the agent retains the policy in his own possession for safekeeping, whether at the request of the insured or not, and the policy not in fact given into the possession of the insured before the loss." The author cites many cases in support of this rule.

Kruger, as agent, had power to issue and renew policies, and was also intrusted with forms of policies to be written, issued and delivered after being signed by the agent, and

when his clerk was instructed to issue a policy and the policy was issued and he took charge of the policy under an arrangement with Barrett previously made, the contract of insurance became complete and effectual. The mere manual possession of the policy is of no consequence, as the possession and caretaking of such policy by Kruger was equivalent to the possession of the respondent. (*Insurance Co. v. Colt*, 20 Wall. (U. S.) 569, 22 L. ed. 423; May on Insurance, sec. 60; *Tennent v. Travelers' Ins. Co.*, 31 Fed. 322; *Squier v. Hanover Ins. Co.*, 162 N. Y. 552, 76 Am. St. 347, 57 N. E. 93.)

If Kruger had the authority to write the policy and enter into the contract of insurance, the payment of the premium was a matter between himself and the respondent, and it was his business to collect the premium upon the policy, and he had the power and authority to give credit for such premium and to charge the same upon the bank account of the respondent, and thus collect the same in due course of business. But the mere fact that the premium was not paid, and that credit was extended, does not affect the validity of the policy or prevent recovery for loss sustained upon the property insured during the time the premium remains uncollected, unless it appears that the insured refused to pay such premium, and that fact does not appear in this case.

We think the law is well settled that the payment of the premium is not a condition precedent to the existence of a policy of insurance, and under the facts of this case the failure of the agent to collect the premium should not defeat the respondent's right to recover. (*McCabe v. Aetna Ins. Co.*, 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641; *Western Ins. Co. v. McAlpin*, 23 Ind. App. 220, 77 Am. St. 423, 55 N. E. 119; *Tennent v. Travelers' Ins. Co.*, 31 Fed. 322; Briefs on Law of Ins., Cooley, vol. 1, p. 480.)

We are satisfied that the jury were not only warranted by the evidence to find the special verdict to the effect that a policy was delivered, but that the law applicable to such facts also fully authorized such a verdict. This leads us next to the consideration of the law governing the adjustment of the loss as shown by the evidence in this case. Weiler, the ad-

juster, who acted for the Home Fire Insurance Co., was directed by the appellant company to investigate the Marysville fire. He proceeded to act in that matter. He had in his possession at the time the report made by Kruger to the appellant company, that the policy in question in this case had been written. He was the special agent and adjuster and proceeded with the other adjuster, Mr. Rooklidge, with the assistance of Patten and Barrett, to adjust the loss, and agreed in the adjustment as to the amount that each company should pay upon such loss, and this was to be approved by Mr. Young of Salt Lake, which was done, and accepted by the respondent. Each insurance company settled its share of the loss according to such agreement, except the appellant company. Weiler did not refuse to act because of want of authority from the appellant company, and did not notify the respondent that he had no authority to act, or that he had no authority to adjust such loss, but did act and reported to the company the agreement made between himself and Rooklidge and Patten and Barrett; and in fact there seems to be no question on the part of the appellant but that he did have authority to act, but it is argued that he had no authority to agree, and did not agree, to pay the adjustment made. It would be most unjust and unfair to permit the appellant company, under the facts of this case, after it had authorized Weiler to proceed to the place of the fire and investigate the same, he being the special agent of the company, and while so acting as such agent entered into an agreement with the other companies interested by reason of other insurance, and compromised and agreed to the amount that each company should pay, and the consent of the respondent was procured to such method and amount of adjustment, and upon such agreement the respondent accepted a payment from the other insurance companies for amounts which were less than the amount the respondent would have received had the four other companies been required to pay the entire loss, to now permit such company in an action to recover such adjustment or compromise made by such agent and reported to the appellant company, to shield itself behind the claim that such adjuster had

no authority to make such adjustment or in any way bind the insurance company by his acts and agreements. The adjustment was openly made without fraud or any mistake whatever, and this fact alone, even in the absence of any explicit promise upon the part of the adjuster, is sufficient, as there arises out of such adjustment an implied promise on the part of the company to pay the loss so agreed to. (*Illinois Mutual Fire Ins. Co. v. Archdeacon*, 82 Ill. 236, 25 Am. Rep. 313; *Remington v. Westchester Ins. Co.*, 14 R. I. 245; *Millers' Nat. Ins. Co. v. Kinneard*, 136 Ill. 199, 26 N. E. 368; *Flannery v. State Mutual Fire Ins. Co.*, 175 Pa. 387, 34 Atl. 798; Briefs on Law of Insurance, Cooley, vol. 4, p. 3586.)

Counsel for appellant contend in their argument that the appellant company is not estopped, and may deny that Weiler had any authority to make the adjustment of loss or make any promises of payment, or any kind of settlement which would in any way bind or affect the liability of the appellant, and that the evidence showing the acts of Weiler in making such adjustment should not have been admitted, for the reason that such evidence tended to prove an estoppel, and that no estoppel has been plead in the case. Referring to the complaint, we find that the respondent alleges the making of the contract of insurance, and "that on or about the 15th day of June, 1908, the said general stock of merchandise, the property of the plaintiff herein, covered by said policy of insurance, and while so situated in the building as mentioned in said policy of insurance, was wholly and totally destroyed by fire. That on or about the 20th day of June, 1908, the defendant herein made and entered into an adjustment of the loss arising by reason of said fire, and at said time agreed and promised to pay the plaintiff herein, in full and complete settlement of the liability of defendant on account of said policy of insurance, the sum of $1,793.68, which amount the plaintiff agreed to accept in full settlement of all liability of the defendant arising by reason of said policy of insurance." This allegation does attempt to plead an equitable estoppel. The facts surrounding the transaction of adjustment are stated and the adjustment and the promise to pay,

and if these facts were not sufficiently plead, counsel for appellant should have taken advantage of such insufficiency by special demurrer. But no special demurrer upon this particular ground was filed. The action as alleged seems to be founded upon the policy and the adjustment of the loss thereunder, and the appellant's promise to pay the same. The evidence clearly shows that the respondent acted upon the facts alleged in the complaint, and was induced to make settlement with all the other companies and accept less than what such companies would have been responsible for, had such adjustment not been made. The agreement made at that time with reference to the adjustment certainly influenced the conduct of the respondent and led him to make the agreement, which, if not relied upon and enforced, would be prejudicial to his interest. In such case the party making such agreement is estopped from denying the same. (*Leland v. Isenbeck*, 1 Ida. 469; *Clyne v. Bingham County*, 7 Ida. 75, 60 Pac. 76; *Lick v. Munro*, 8 Ida. 510, 69 Pac. 285; 11 Am. & Eng. Ency. of Law, p. 136.)

Upon the evidence the jury found by their special verdict that there was a promise on the part of the defendant to pay plaintiff the loss sued on in this case, and that such promise was made by the appellant through its agent, E. M. Weiler, Jr. This finding is in accordance with the allegations in the complaint, and under the facts in this case is an equitable estoppel against the appellant in its claim that the adjuster made a mistake and had no authority to act.

It is, however, contended by the appellant that although the court finds that a policy of insurance was issued by the appellant company, and an adjustment of the loss sustained by the respondent by fire was made by Weiler, as the adjuster and agent of the appellant company, yet notwithstanding that fact the action of the adjuster was not binding upon the appellant company by reason of the contract or agreement entered into before the adjustment was made, in the nature of a non-waiver agreement. This agreement is set forth in the statement of facts. Under the provisions of this contract it is provided that the acts of the adjuster in investigating the cause of the

fire and ascertaining the amount of loss and damage to the property of the respondent by fire, *should in no way invalidate any of the conditions of the policy, and should in no way waive or invalidate any rights whatever of either of the parties to the agreement, and that the rights of the parties are preserved as they were prior to such investigation and determination.* This agreement did not prevent the adjuster from making an adjustment of the loss, and also from making an agreement, that the amount of loss determined by such adjuster was the amount due from the company upon the policy, and that such sum would be paid. The agreement also recognized the existence of a policy of insurance and provides that the action under this agreement shall not invalidate any of its provisions. The acts of Weiler in adjusting the loss were approved by the company by its own acts in receiving the report of the adjuster, and in no way objecting thereto until more than two months after such report was made, and then for the first time notifying the respondent that there was no policy, and that Weiler had acted under a mistake. What mistake Weiler made is not pointed out by the company, and such mistake does not appear. There was ample consideration for such adjustment in the compromise effected and accepted by all parties, and the further consideration that the respondent released the other companies and accepted payment from them on more favorable terms than their policies bound them, had not the appellant company participated in and agreed to such adjustment, and under the authorities heretofore cited, we think it is clear that the appellant company was in no way released from its liability upon the policy or the adjustment made, by reason of the nonwaiver agreement of June 22d.

Counsel for appellant also calls attention in his brief to the fact that the policy of insurance contains the following condition: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, until after full compliance by the insured, with all the foregoing requirements, nor unless commenced within

twelve months next after the fire.'' Upon this provision counsel argues that the fire having occurred on June 15, 1908, and the action commenced on September 23, 1909, therefore the provisions contained in the policy above quoted prevent the maintaining of this action. We have examined very carefully the record in this case, and we do not find that this question was ever raised or presented during the trial, or on motion for a new trial, and it is presented to this court for the first time. The appellant made no objection to the introduction of the policy of insurance at the time it was offered, nor any motion for nonsuit on the ground that the action was barred by the provisions of the policy, no motion was made at the conclusion of the evidence for a dismissal of the action on the ground that the action could not be maintained because it was barred, no instruction was tendered by the appellant directing the jury as to the right to recover by reason of this provision in the policy; it was not assigned as a reason for granting a new trial; it was not argued or presented to the trial court upon the hearing of the motion for a new trial, and at no time was the trial court's attention called to this provision of the policy; and for the first time it is argued in this court upon appeal. This court has so often held that it will not consider or review a question presented to this court for the first time, unless it be a question of jurisdiction, or that the pleading does not state a cause of action, that it seems almost unnecessary to cite the decisions, but the principle is well recognized in the following authorities: *Smith v. Sterling,* 1 Ida. 126; *Aram v. Edwards,* 9 Ida. 333, 74 Pac. 961; *Watson v. Molden,* 10 Ida. 570, 79 Pac. 503; *Miller v. Donovan,* 11 Ida. 545, 83 Pac. 608; *Medbury v. Maloney,* 12 Ida. 634, 88 Pac. 81; *Steve v. Bonners Ferry Lumber Co.,* 13 Ida. 392, 92 Pac. 363.

Thirty-two errors are also assigned and discussed by counsel for appellant in the admission and rejection of evidence and the overruling of motions to strike out certain evidence offered by respondent. We shall not undertake to take up each of these alleged errors, but have examined the evidence to which these objections were made, and the motions

to strike the same out after having been received, and we discover no substantial error of the trial court in its action in such matters. Many of these objections are founded upon the order of proof as it was made by respondent's counsel upon the trial, but it was certainly within the discretion of counsel for respondent to offer the proof in the order in which counsel thought proper, as long as it was in an orderly manner, and not prejudicial to either party, and from our examination of the evidence we are satisfied that the trial court committed no error in that respect.

Exceptions were also taken to the refusal of the trial court to give certain instructions requested by the appellant. We have examined the instructions requested by appellant, some of which clearly state the law, while others, we think, should not have been given, but whether the trial court erred in refusing to give the instructions requested cannot be determined in the absence of the instructions given by the trial court. It is barely possible that the trial court gave the law in substance or effect as requested by the instructions requested by the appellant, and this court will presume in the absence of the instructions that the court correctly instructed the jury. Where instructions are requested upon a trial by either party to the suit, and such instructions are refused, in order for this court to review such instructions and determine whether or not the trial court erred in refusing such instructions, it is necessary for the appellant to bring to this court upon the appeal all the instructions given upon the trial, for the reason that if the court gave the law requested in other instructions, then there was no prejudicial error in refusing the instructions requested.

There are also errors alleged by reason of the giving of certain instructions requested by counsel for the respondent. We have examined these instructions, and we think they clearly state the law and we find no error, and this is especially true by reason of the fact that the instructions objected to in this case, and brought here for review, do not purport to be all the instructions given upon the trial.

From the evidence in this case it appears that the jury made a mistake in figuring the interest upon the amount due in the sum of $1.37, and this sum is agreed to by counsel for the respective parties as an error in the calculation of the jury of interest. It also appears that the appellant, or Kruger, has a claim against the respondent for $75 for premium; if this sum is due the appellant, it should have been plead as a counterclaim in this action, but this was not done. However, as we are forced in this case to modify the judgment on account of the error in interest, we feel that it would be nothing more than right to also deduct the amount of the premium which has not been paid. The judgment in this case is therefore modified, and the trial court is ordered and directed to enter judgment that the respondent recover from the appellant in the sum of $1,968.42, with interest thereon at the rate of seven per cent per annum from the 17th day of June, 1910, with costs, in accordance with this opinion. Costs of this appeal are awarded to the respondent.

SULLIVAN, J., Concurring.—I concur in the conclusion reached by Chief Justice Stewart on the grounds: First, that the record shows a policy of insurance was issued by the duly authorized agent of the appellant company and was in force at the time the merchandise was destroyed by fire; second, that the adjustment of the loss was fairly made and the company is bound by that adjustment; third, that the question whether this action was brought within the time provided for by the provisions of the insurance contract cannot be raised for the first time in this court; fourth, that to determine whether the trial court erred in refusing certain instructions requested by the appellant, it is necessary for the appellant to bring to this court all the instructions given upon the trial. But I do not concur on the ground of estoppel suggested in the opinion, nor do I agree with what is said as to the company's implied agreement by the act of adjustment. By that act it agreed to nothing except the fact that a fire had occurred and the amount of the loss suffered by such fire.

Ailshie, J., concurs with Justice Sullivan.