Gushner, Assignee, *v.* Silverman et al. (Tioga National Bank & Trust Co., Appellant.)

Argued October 2, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

144

*H. James Sautter,* with him *Harry E. Apeler,* and *Joseph K. Coxe,* for appellant.

*David S. Malis,* with him *Benjamin Zuckerman,* for appellee.

OPINION BY BALDRIGE, J., December 19, 1939:

The jury in this case found a verdict for the defendants and the court subsequently entered judgment n. o. v. in favor of the plaintiff, the appellee. The Tioga National Bank and Trust Company, executor under the will of Charles T. Mulligan, deceased, appealed.

The action originated by the issuance of a scire facias sur mortgage. The appellant in its affidavit of defense alleges that the mortgage was paid to the agent of the mortgagee. The appellee, the present holder of the mortgage, contends that there was insufficient proof of an implied agency to submit the issues to a jury.

The salient facts may be stated as follows: On March 11, 1924, Israel Silverman and his wife, through a mortgage broker, Albert J. Cohen, borrowed $1,000 from Solomon Katz, and gave as security therefor a bond with accompanying mortgage covering premises located at 901 West Erie Avenue, in the city of Philadelphia. This property was already subject to two mortgages, aggregating $11,000. The mortgage was payable within one year and provided for monthly installments of $25 on account of the principal, which was approved by Katz who directed Cohen to have it recorded. The Silvermans paid the monthly installments to Cohen, but Katz testified that he received only

the interest of $5 a month and relied upon Cohen's statement that the mortgagors could not make larger payments.

The Silvermans sold this property in September, 1924, to Charles T. Mulligan, now deceased. At the settlement made at the office of the Northern Central Trust Company (now in the hands of the State Banking Department), Cohen produced a statement which showed a balance of $853.50 due on the $1,000 mortgage. The first two mortgages were paid and satisfied of record and a clerk drew a check, dated September 23, 1924, in the sum of $853.50, to the order of Solomon Katz, in satisfaction of his third mortgage, which was delivered to Cohen who stated he would have the Katz mortgage marked satisfied. This check bears the endorsements of Solomon Katz and Albert J. Cohen and was deposited to the credit of the latter in his bank. Katz denied he endorsed the check, that Cohen was his authorized agent, and his knowledge of the settlement, stating that he never received any payments on account of the mortgage except $5 monthly which he continued to receive from Cohen for a period of two and a half years after the date of the mortgage.

In 1930 Cohen left Philadelphia and there was evidence that he is now located in California.

It appears from the record that Katz, through Cohen, loaned Albert E. Dutrieuille $2,500, taking as security a mortgage, dated September 12, 1924, eleven days before the Silverman mortgage was repaid, which provided for its repayment within six months, in monthly installments of $250. The mortgagor testified that all his payments were made to Cohen. He produced one check for $250, dated in December, 1924, which was drawn to Cohen's order and deposited by him in his personal bank account. According to the written statement submitted by Cohen at the settlement, Dutrieuille had made four payments, each in the sum of $250, on account of the principal. The settlement was had at

the office of the Continental-Equitable Title Insurance and Trust Company (later taken over by the Pennsylvania Company), and a check for $1,577, dated February 25, 1925, to the order of Solomon Katz, was delivered to him in payment of this mortgage. The check was endorsed by Cohen for deposit and Katz satisfied the mortgage of record although he denied having endorsed the check. Evidently he received the money, otherwise he would not have satisfied the mortgage of record. The jury had an opportunity to compare the signature on this latter check with the alleged forged signature on the Northern Central Trust Company check. It was for them to determine whether either or both were forgeries.

Anna J. DeLande, also, on October 1, 1924, through Cohen, borrowed $1,300 from Solomon Katz on a mortgage, which was to be repaid in two installments, one of $800 and the other of $500. The $500 installment was paid January 21, 1925, and the $800, October 30, 1925. This mortgage was satisfied of record by Katz, November 5, 1925. The mortgagor had never met Katz. Her transactions were through Cohen and she made all her payments through him. Thus, there was evidence that Cohen received on these three mortgages not only interest payments but also payments on account of principal from three different people during the years 1924 and 1925.

In 1924 Katz filed with the personal property tax collector his return for 1925 showing taxable securities to the extent of $8,500. In 1925 he filed his 1926 return, in which he swore he had no taxable securities, and in 1926 he filed his 1927 return showing that he had no mortgages, notwithstanding he admitted receiving interest on the Silverman mortgage to September, 1926. For the years 1928 to 1939, inclusive, he made no return.

Early in May, 1938, the mortgaged property was sold and it was then discovered that the Katz mortgage had never been satisfied. The broker who negotiated the

sale called upon Katz, who then for the first time denied having received the money from the Northern Central Trust Company. On May 11, 1938, Katz assigned this mortgage to his nephew, Gushner, the appellee, allegedly for the consideration of $500, although he said it was worth $1,000 and knew that on the record it was the first lien against the premises described therein and, if unpaid, was amply secured. About one week later, the assignee of the mortgage started foreclosure proceedings, claiming $1,000 with interest from March 11, 1924, to May 18, 1938. At the trial plaintiff reduced the amount of his claim by allowing a credit for the interest paid for two and a half years. Of course, if interest actually was paid for that period, and that was for the jury to decide, it would have a bearing on the question whether Katz received the money on the $853.50 check. Neither Katz nor his assignee was able to produce either the bond or mortgage. Katz offered the excuse that these papers were kept in an upstairs bedroom until 1932 when one of his children married and took possession of the room. He said he thereupon removed all his papers to the cellar of his home. When the broker who sold the property in 1938 spoke to Katz about these papers, the latter told him that a search of the cellar was unsuccessful and he concluded that they had been thrown out by his wife as "rubbish."

The long delay of thirteen years and eight months from the date of repayment, as alleged by the appellant, or eleven years and eight months from the date given by the appellee as the last payment of interest, while not of itself sufficient to create a presumption of payment, was, with other circumstances, to which attention has been called, of sufficient import to raise a question of fact for the jury. The Supreme Court, in *Conrad's Estate*, 333 Pa. 561, 565, 3 A. 2d 697, said: "...... it is well established that, where there is a long delay, presumption of payment of a sealed instrument may arise in a period less than twenty years if there

is a factual basis to support it other than the delay. The lapse of time combined with other circumstances is evidence from which a presumption of fact may arise that payment has been made."

It seems highly improbable that the mortgagee, in dire financial straits between 1929 and 1938, according to his own admission did not make any demand for the payment of the principal or interest during that time. "Thus, if it be proved that the holder of the note has been constantly pressed for money, while the maker was abundantly able to pay, such fact, with other circumstances, might justify the presumption of payment": *Morrison v. Collins,* 127 Pa. 28, 33, 17 A. 753.

There was proof that Cohen, as agent, certified Katz' address, under the Act of April 11, 1899, P. L. 41, §1 (16 PS §3352), which provides that the holder, owner, or assignee of any mortgage offered for record or assignment shall furnish to the Recorder of Deeds the full name, residence, and address of such holder, owner or assignee, in four different mortgages, those to which we have referred and also a mortgage given by Catherine W. George and her husband to Solomon Katz, which was satisfied of record September 14, 1925. The court properly instructed the jury that that circumstance of itself did not make Cohen the agent of Solomon Katz; that it was a matter for their consideration in determining the question of agency.

It has been held in numerous cases that implied agency may be shown by a course of dealing on the part of the agent and a recognition of his acts by the principal: *Flannery v. Ins. Co.,* 175 Pa. 387, 393, 34 A. 798; *Colonial Trust Co. v. Davis et ux.,* 274 Pa. 363, 118 Pa. 312; *Williams v. Cook,* 289 Pa. 207, 137 A. 232; *Dobbs Exr. v. Zink et ux.,* 290 Pa. 243, 247, 138 A. 758.

While no one of these facts we have recited was of itself sufficient to prove agency, taken in their aggregate, they were adequate to raise a question for the jury in determining whether the mortgage was paid. As

the Chief Justice said in the Conrad case (333 Pa. 561 566, 567, 3 A. 2d 697) :

"No fixed rule of substantive law or evidence can be laid down as to the scope, quality or quantity of the additional circumstances necessary to support the presumption of payment arising from a delay of less than twenty years. Each case depends upon its individual circumstances. Such proof as the debtor's ability to pay during that period, or, a statement of the creditor or obligee that the debt was paid, or it was regarded as not owing, or he had destroyed the note, have been held sufficient in conjunction with the lapse of a long period of years before bringing suit.

". . . . . . As we have heretofore stated, the corroborative circumstances take on greater significance with the passage of time after the maturity of the obligation, and in a case like the present one, involving a stale claim against an estate, slight additional evidence is required."

We are all of the opinion that the issues raised at the trial were for the jury's determination.

The judgment of the learned court below is reversed, and judgment is directed to be entered on the verdict.